IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT J. BUTLER, )
 )
      Plaintiff, )
 )
vs. ) Civil Action No. 11-376
 )
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY, )
 )
      Defendant. )

**MEMORANDUM OPINION**

**INTRODUCTION**

Plaintiff, Robert J. Butler, seeks judicial review of a decision of Defendant, Commissioner of Social Security ("the Commissioner"), denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433 and §§ 1381-1383f.[1] Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Plaintiff's motion for summary judgment will be granted to the extent he seeks a remand of this case for further

---

[1] The Social Security system provides two types of benefits based on an inability to engage in substantial gainful activity: the first type, DIB, provides benefits to disabled individuals who have paid into the Social Security system through past employment, and the second type, SSI, provides benefits to disabled individuals who meet low-income requirements regardless of whether the individuals have ever worked or paid into the Social Security system. With respect to Plaintiff's claim for DIB, his earnings record shows that he has acquired sufficient quarters of coverage to remain insured through December 31, 2012. (R. 10).

1

proceedings, and the Commissioner's cross-motion for summary judgment will be denied.

**PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on January 15, 2008 (with a protective filing date of December 27, 2007), alleging disability since June 14, 2007 due to bursitis in his right shoulder, osteoarthritis in both knees, diabetes and bipolar disorder. (R. 63-65, 66-73, 82). Following the denial of Plaintiff's applications on April 15, 2008, he requested a hearing before an administrative law judge ("ALJ"). (R. 37-41, 42-46, 47-48). Plaintiff, who was represented by counsel, appeared at the hearing which was held on October 27, 2009. A vocational expert ("VE") also testified. (R. 25-33).

The ALJ issued a decision on December 4, 2009, denying Plaintiff's applications for DIB and SSI based on a determination that, despite his physical and mental impairments, Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.[2] (R. 10-21). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 28, 2011. (R. 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. This appeal followed.

---

[2] The Social Security Regulations define RFC as the most a disability claimant can still do despite his or her physical or mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a).

2

**BACKGROUND**

Plaintiff did not testify during the hearing before the ALJ on October 27, 2009. However, Plaintiff's counsel presented the following summary of the facts on his behalf:

Plaintiff was 54 years of age at the time of the hearing.[3] Plaintiff has a 10th grade education, and he obtained a GED while in the military.[4] In the past, Plaintiff has worked as a security guard and a stock person. Plaintiff has been diagnosed with diabetes, medial meniscus tears in both knees, bipolar disorder, major depressive disorder, anxiety disorder and intermittent explosive disorder. At the time of the hearing, Plaintiff was under the care of a psychiatrist at a Veterans Administration Medical Center ("VAMC").[5]

With respect to Plaintiff's mental limitations, counsel indicated that, according to his psychiatrist, Plaintiff has no ability to deal with the public, and a poor ability to use judgment, deal with work stress, maintain attention and concentration and behave in an emotionally stable manner. Counsel also noted that Plaintiff has difficulty sleeping due to racing thoughts. As a result, Plaintiff experiences fatigue which requires him to nap during the day for 3 to 4 hours.

---

[3] Plaintiff's date of birth is September 12, 1955. (R. 63).
[4] Plaintiff served in a non-combat position in the United States Marine Corps from 1974 to 1976. (R. 279).
[5] Plaintiff has received medical and psychiatric treatment at the VAMC on Highland Drive in Pittsburgh, Pennsylvania since October 2001. (R. 391).

3

As to physical limitations, counsel indicated that due to meniscus tears in both knees, Plaintiff's ability to use his lower extremities for pushing and pulling is limited; he cannot squat; he requires a cane to ambulate; and, due to knee pain, he can only sit for 20 to 40 minutes and stand for 40 to 45 minutes. (R. 27-28).

**MEDICAL EVIDENCE**

The administrative record in this case includes the following medical evidence:[6]

On April 26, 2007, Plaintiff was seen in the emergency room of the VAMC for complaints of left knee pain of three weeks' duration.[7] Plaintiff reported that he was a stocker at Walmart and that he had experienced pain while kneeling to stock a bottom shelf. When he attempted to stock the shelf by sitting on the floor, Plaintiff could not bend his left knee to sit down due to severe pain. Plaintiff's physical examination did not reveal redness or warmth; he had full active range of motion

---

[6] In the brief filed in support of his motion for summary judgment, Plaintiff does not challenge the ALJ's conclusions regarding the severity of his mental impairments and their effect on his ability to engage in substantial gainful activity. Rather, Plaintiff's entire argument is based on limitations resulting from his knee pain. As a result, the Court's summary of the medical evidence is limited to Plaintiff's physical impairments.

[7] The first reference to a complaint of knee pain in the administrative file is set forth in a medical record dated March 25, 2003. On that date, Plaintiff's right knee was x-rayed for medial knee pain. The x-ray showed mild patellofemoral degenerative disease. (R. 141-42).

4

("ROM") without pain; and he had no joint line tenderness or laxity. Motrin was prescribed for the pain.[8] (R. 222-25).

On May 8, 2007, Plaintiff was seen by his primary care physician ("PCP") at the VAMC for complaints of swelling and redness in his left knee. The impression of an x-ray of Plaintiff's left knee included mild osteoarthritis of the medial compartment and patellofemoral joint, tiny osteophyte formation, mild loss of joint space and small joint effusion.[9] Plaintiff was treated with acupuncture and prescribed Naproxen.[10] (R. 129, 136, 214-16).

On August 13, 2007, Plaintiff called the VAMC complaining of right knee pain with mild swelling. Plaintiff reported that he was no longer employed as a stockperson because he could not bend and get back up which the job required. (R. 219-20). Three days later, Plaintiff was seen by his PCP for bilateral knee pain that interfered with his ability to kneel and get back up. Plaintiff also complained of right shoulder pain. Plaintiff's physical examination revealed tenderness over the

---

[8] Motrin, or ibuprofen, is a non-steroidal anti-inflammatory drug that is used, among other reasons, to relieve pain, tenderness, swelling and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints). www.nlm.nih.gov/medlineplus/druginfo ("Medlineplus").

[9] Effusion or water on the knee is a general term for excess fluid accumulation in or around the knee joint. Water on the knee may be the result of trauma, overuse injuries or an underlying disease or condition. Signs and symptoms of water on the knee typically include swelling, stiffness and pain. www.mayoclinic.com.

[10] Like Motrin, Naproxen, another non-steroidal anti-inflammatory drug, is used, among other reasons, to relieve pain, tenderness, swelling and stiffness caused by osteoarthritis. Medlineplus.

5

medial tibial condyle, bilaterally and tenderness over the subacromial bursa of the right shoulder. The PCP's diagnoses included osteoarthritis of the knees, diabetes mellitus type 2, hypertension and bursitis of the right shoulder. Plaintiff's knee pain was treated with acupuncture again and he was instructed to continue taking Naproxen. (R. 126-30).

Plaintiff was seen by his PCP on February 19, 2008 for continued bilateral knee pain that limited his ability to walk and interfered with his ability to sleep. The PCP noted that acupuncture only provided relief for a short period, *i.e.*, a week. The PCP also noted that Plaintiff continued to take Naproxen which "[h]elps a little." (R. 486-90). MRIs of Plaintiff's knees were performed that day. Both MRIs showed (1) a vertical tear at the posterior horn of the medial meniscus; and (2) mild tricompartmental degenerative changes and minimal joint effusion. (R. 460-64). X-rays of Plaintiff's knees the same day showed bilateral degenerative changes. (R. 465).

On February 25, 2008, Plaintiff was seen by a nurse at the VAMC for a complaint of chronic pain in both knees. Plaintiff rated the severity of his pain as an 8 on a scale of 1 to 10. (R. 482-83). The next day, orthopedic and physical therapy ("PT") consultations were requested for Plaintiff. (R. 471-74).

On March 13, 2008, Plaintiff was seen by Dr. Franklin Chou for an orthopedic consultation. Plaintiff reported worsening

6

bilateral knee pain for more than a year with occasional locking. Plaintiff also reported that he had to stop and rest after walking for 30 minutes. Dr. Chou recommended, and administered, cortisone injections to Plaintiff's knees which he tolerated without complication. Dr. Chou also recommended PT. In the event Plaintiff continued to experience significant pain and mechanical symptoms, Dr. Chou indicated that arthroscopic surgery may be an option. (R. 638-40).

On April 7, 2008, Dr. Macy I. Levine performed a consultative disability evaluation of Plaintiff. Following Plaintiff's physical examination, Dr. Levine's diagnoses included "probable degenerative arthritis of both knees." (R. 510-12). In a Medical Source Statement of Plaintiff's Ability to Perform Work-Related Physical Activities, Dr. Levine opined that Plaintiff was limited to lifting and carrying 25 pounds occasionally; he could stand one hour or less; he had no limitation in his ability to sit; his ability to push and pull with the lower extremities was limited; and he could only occasionally bend, kneel, stoop, crouch, balance and climb. (R. 515-16).

On April 14, 2008, a State agency medical consultant completed a Physical RFC Assessment for Plaintiff based on a review of the evidence in the administrative file. The doctor opined that Plaintiff could occasionally lift and carry 20

7

pounds and frequently lift and carry 10 pounds; he could stand and/or walk about 6 hours in an 8-hour workday; he could sit about 6 hours in an 8-hour workday; he could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; and he should avoid extreme heat and cold and hazards such as dangerous machinery and heights. In explaining the basis for the opinion, the doctor noted that Plaintiff was not under the care of an orthopedic specialist; he did not require an assistive device to ambulate; his gait was normal; he was independent with respect to personal care; he took walks and performed chores; and his treatment had been routine and conservative. The doctor also noted that Dr. Levine's limitation of Plaintiff to one hour of standing appeared to be an overestimate based on Plaintiff's limited examination abnormalities, minimal treatment and ability to ambulate without an assistive device. (R. 517-23).

On May 16, 2008, Plaintiff was contacted by his PCP regarding his claim for disability. Plaintiff reported severe knee pain with locking; an inability to tolerate standing, lifting and walking; and pain relief of only 1-week duration following the cortisone injections in March. The PCP noted that Plaintiff would be referred back to orthopedics for possible debridement (surgery) and to PT for rehabilitation and a cane.

The PCP also noted that Plaintiff qualified for temporary, but not permanent, disability. (R. 624).

Plaintiff's PT consultation was performed on June 2, 2008. Plaintiff reported a one-year history of bilateral knee pain with "heaviness" in his quadriceps. Plaintiff rated the pain in his right knee as fluctuating between 6 and 10 and the pain in his left knee as fluctuating between 5 and 6. Plaintiff indicated that his knee pain was aggravated by walking downhill, walking up and down stairs, kneeling and squatting. Plaintiff's gait was described as "antalgic in R. stance." The therapist fitted Plaintiff for a straight cane per his doctor's orders.[11] It was decided that Plaintiff would attend PT two times a week for 6 weeks, and the therapist described Plaintiff's rehabilitation potential as "good." (R. 621-22).

On June 12, 2008, Plaintiff was seen by Dr. Christopher Baker, another orthopedic specialist, for continued complaints of significant pain in his knees. Plaintiff reported that his right knee locked on him causing significant feelings of instability. Plaintiff's physical examination showed normal anatomic alignment in his lower extremities bilaterally; minimal to no effusion of the knees bilaterally; full ROM; stability on various tests but significant medial joint line pain. Dr. Baker

---

[11] Individual therapy session and psychiatric records dated July 16, 2008, August 18, 2008, October 3, 2008, January 30, 2009 and June 15, 2009 and a social work record dated September 23, 2009 noted that Plaintiff walked with the help of a cane due to knee pain. (R. 530, 534, 575, 593, 600, 603).

9

discussed surgery with Plaintiff and noted that Plaintiff was "very petrified" of infection due to his diabetes. Plaintiff requested, and Dr. Baker administered, a repeat cortisone injection in the right knee. (R. 615).

Plaintiff was seen by his PCP for a follow-up visit on July 15, 2008. Plaintiff continued to report knee and shoulder pain and indicated that he had not been going to PT "because of finances." Plaintiff reported minimal relief of knee pain from medication, acupuncture and steroid injections. Plaintiff also indicated that he did not want to undergo surgery because he was afraid of complications. Plaintiff's physical examination revealed tenderness over the medial meniscus bilaterally and tenderness of the right shoulder over the subacromial bursa. (R. 608-11).

On October 15, 2008, Plaintiff underwent a Functional Capacity Evaluation to determine his work-related capacities. With respect to self-perceived deficits, Plaintiff reported an inability to sit for longer than 2 hours, stand for greater than 30 minutes and walk for more than 20 minutes. Plaintiff rated the pain in his right knee a 10, the pain in his left knee a 4 and the pain in his right shoulder a 10. Plaintiff's physical strength was tested. As to Plaintiff's ability to carry items, the evaluator noted that Plaintiff carried 40 pounds for 60 feet with a noticeable right leg limp; and that Plaintiff had to stop

due to right leg pain which he rated an 8. The evaluator also noted that Plaintiff "demonstrated a tolerance for walking at an occasion frequency level." (R. 590). The evaluator concluded that Plaintiff's work capacity was at the light level as determined by the Dictionary of Occupational Titles, and he recommended that Plaintiff be enrolled in a work reconditioning program, a work hardening program or a sheltered work shop to determine feasibility of returning to work. (R. 588-91).

**ALJ'S DECISION**

In order to establish a disability under the Social Security Act, a claimant must demonstrate an inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1). A claimant is considered unable to engage in any substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A).

When presented with a claim for disability benefits, an ALJ must follow a sequential evaluation process. See 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4). The process was described by the Supreme Court in <u>Sullivan v. Zebley</u>, 493 U.S. 521 (1990), as follows:

* * *

> Pursuant to his statutory authority to implement the SSI Program, (footnote omitted) the Secretary has promulgated regulations creating a five-step test to determine whether an *adult* claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). (footnote omitted). The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. <u>See</u> 20 C.F.R. §§ 416.920(a) through (c)(1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. <u>See</u> 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A)(1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

* * *

493 U.S. at 525-26.

The claimant bears the burden of establishing steps one through four of the sequential evaluation process for making disability determinations. At step five, the burden shifts to the Commissioner to consider "vocational factors" (the claimant's age, education and past work experience) and determine whether the claimant is capable of performing other

12

jobs existing in significant numbers in the national economy in light of his or her RFC. Ramirez v. Barnhart, 372 F.2d 546, 550-51 (3d Cir.2004).

With respect to the ALJ's application of the five-step sequential evaluation process in the present case, steps one and two were resolved in Plaintiff's favor: that is, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 14, 2007, the alleged onset date of disability, and the medical evidence established that Plaintiff suffers from the following severe impairments: degenerative joint disease of the knees, degenerative disease of the lumbar spine, type 2 diabetes mellitus, nonproliferative diabetic retinopathy, right shoulder bursitis and substance addiction disorder. (R. 12).

Turning to step three, the ALJ found that Plaintiff's impairments were not sufficiently severe to meet or equal the requirements of any impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1, and, in particular, Listing 1.00, relating to the musculoskeletal system, and Listing 12.00, relating to mental disorders. (R. 13-14).

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, concluding that Plaintiff retained the RFC to perform light work with a discretionary sit/stand option in a

low stress environment.[12] (R. 14-19). The ALJ then proceeded to step four, finding that Plaintiff has no past relevant work.[13] (R. 19).

Finally, at step five, considering Plaintiff's age, education, work experience, RFC and the VE's testimony, the ALJ found that Plaintiff could perform other work existing in the national economy, including the jobs of a packer and an assembler. (R. 19-20).

**STANDARD OF REVIEW**

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court

---

[12] Under the Social Security Regulations, "light work" involves "lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).
[13] In light of Plaintiff's significant work history, including 4½ years as a stocker for Walmart immediately prior to his alleged onset date of disability, the Court notes that the ALJ's step four determination is clearly erroneous.

14

would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986).

**DISCUSSION**

I

In determining that Plaintiff retained the RFC for light work, the ALJ rejected the opinion of Dr. Levine, the consultative examiner, concerning the severity of the limitation in Plaintiff's ability to stand and walk during an 8-hour workday (i.e., one hour or less) which would preclude a RFC for light work, and adopted the opinion of the non-examining State agency medical consultant. Plaintiff contends the ALJ was required to accept Dr. Levine's opinion because he accepted the doctor's opinion regarding his lifting ability. Plaintiff further contends that Dr. Levine's opinion regarding his ability to stand and walk would limit him to work at the sedentary level of exertion, and notes that if he is limited to sedentary work, he is eligible for disability benefits under the Grids due to his age, education and previous work experience.[14] See 20 C.F.R.

---

[14] As noted by Plaintiff, light jobs require "a good deal of walking or standing - the primary difference between sedentary and most light jobs." See Social Security Ruling 83-10. If, in fact, Plaintiff was limited to walking one hour or less in an 8-hour workday as opined by Dr. Levine, he would not have the RFC for light work as the ALJ found.

15

Pt. 404, Subpt. P, App. 2, Rule 201.09. (Docket No. 8, pp. 4-5).

After consideration, the Court finds this argument to be meritless. As noted by the Commissioner, Dr. Levine is not a treating physician whose opinion may be entitled to controlling weight. As a result, the ALJ was not required to incorporate each of Dr. Levine's findings regarding Plaintiff's physical capacities in his RFC assessment.[15] As further noted by the Commissioner, it is clear from his decision that the ALJ based Plaintiff's RFC assessment on the opinion of the non-examining State agency medical consultant which he was entitled to do. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)(ALJs must consider findings and other opinions of State agency medical consultants as opinion evidence because they are highly qualified physicians who are also experts in Social Security disability evaluation). (Docket No. 10, pp. 15-18).

Nevertheless, the Court concludes the case must be remanded to the Commissioner for further proceedings. In assessing Plaintiff's RFC, the ALJ failed to discuss significant probative evidence which supports Plaintiff's claim that he is limited to

---

[15] In this connection, the Court notes that even a treating source's opinion on the issue of the nature and severity of a claimant's impairment is not always entitled to controlling weight. Rather, to be entitled to controlling weight, the treating source's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

16

sedentary work and, therefore, is disabled under the Grids. See e.g., Wier v. Heckler, 734 F.2d 955 (3d Cir.1984)(In proceeding in which 17-year-old mentally impaired claimant sought SSI, ALJ failed to mention and explain medical evidence adverse to his determination to deny benefits necessitating remand); Cotter v. Harris, 642 F.2d 700 (3d Cir.1981)(Ruling that claimant who sought disability benefits for his heart condition was not disabled was required to be vacated when ALJ failed to explain his implicit rejection of evidence which supported claim or even to acknowledge presence of such evidence). Specifically, after comprehensive strength testing, the evaluator who performed the FCE of Plaintiff on October 15, 2008, concluded that Plaintiff demonstrated a tolerance for walking on "occasion." This evidence, which clearly is adverse to the determination that Plaintiff can perform light work, was never discussed by the ALJ in his decision. (R. 590).

## II

In his decision, the ALJ found that Plaintiff's subjective complaints of disabling knee pain were not entirely credible, and Plaintiff also challenges this determination. After reviewing the ALJ's stated reasons for his adverse credibility determination in this case, the Court concludes that the issue of the credibility of Plaintiff's subjective complaints should be revisited on remand. Specifically, four facts cited by the

17

ALJ in support of his adverse credibility determination were contradicted by evidence of record which was not discussed.

First, the ALJ stated that Plaintiff was not under the care of an orthopedic specialist. In fact, Plaintiff's PCP at the VAMC referred him to orthopedic specialists on two occasions and both orthopedic specialists administered cortisone injections to Plaintiff's knees. Moreover, both orthopedic specialists discussed arthroscopic knee surgery with Plaintiff but, due to his diabetes, Plaintiff is too afraid of complications to undergo surgery. Second, despite evidence that Plaintiff's PCP prescribed a cane for him and evidence of numerous subsequent observations of Plaintiff using the cane to walk,[16] the ALJ stated in a conclusory manner that Plaintiff did not require an assistive device to walk.[17] If, in fact, the ALJ's finding was based on Social Security Ruling 96-9p, which requires evidence "describing the circumstances for which [a cane] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)" to establish medical necessity, it is not clear in his decision. On remand, the Commissioner shall obtain a statement from Plaintiff's PCP to clarify whether Plaintiff's

---

[16] See footnote 11.
[17] The ALJ's conclusory finding with regard to Plaintiff's need for a cane to walk is particularly troubling in light of his observation of Plaintiff with a cane at the hearing and his attorney's representation that he needs the cane to walk.

18

cane is a medical necessity.[18] Third, the ALJ stated that Plaintiff's gait is normal. A review of the record, however, reveals numerous references to Plaintiff's abnormal gait which apparently were overlooked or ignored by the ALJ. (R. 530, 534, 575, 590, 593, 600, 603, 621). Finally, the ALJ stated that Plaintiff had not had PT. In fact, Plaintiff was referred to, and evaluated for, PT and there is evidence that he did not follow through with PT due to his financial circumstances. In sum, the credibility of Plaintiff's complaint of disabling knee pain should be re-evaluated on remand.

*William L. Standish*
William L. Standish
United States District Judge

Date: April 1}, 2012

---

[18] In this connection, Plaintiff asserts that he is required to use a cane to walk due to the osteoarthritis and meniscus tears in his knees; that his attorney informed the ALJ of his need for a cane for ambulation and balancing during the hearing; and that in light of Social Security Ruling 96-9p's recognition that the need for a hand-held assistive device significantly erodes the sedentary occupational base, "[i]t follows ... that jobs at the 'light' exertion level, which require even more standing, walking and carrying, would be further eroded by the need for a cane for walking and balancing." (Docket No. 8, p. 7). The Court agrees with Plaintiff that the issue of whether a cane is a medical necessity for him is critical in assessing his RFC.